IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FRANKLIN D. CONLEY,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>WARDEN IAN M. HEALY,<br><br>　　　　　Respondent. | Case No. 5:24-cv-1430<br><br>CHIEF DISTRICT JUDGE<br>SARA LIOI<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Petitioner Franklin D. Conley filed a petition under 28 U.S.C. § 2241 for a writ of habeas corpus. *See* Doc. 1. He challenges the determination reached by the Bureau of Prisons that he is ineligible under the First Step Act of 2018 to apply time credits toward his time in prerelease custody or supervised release. Doc. 1-2, at 8–9[1]; *see* Pub. L. 115-391, § 101(a), 132 Stat. 5194 (codified at 18 U.S.C. § 3632(d)(4)). The Court referred this matter to a Magistrate Judge for preparation of a report and recommendation. Doc. 4. For the reasons stated below, I recommend that the Court deny Conley's petition.

*Background*

In 2011, Conley was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *United States v. Conley*, No. 5:10-cr-490

---

[1] When citing a page of a parties' filings in this Report and Recommendation, I refer to the CM/ECF-generated page numbers at the top of the parties' filings.

(Sept. 2, 2011), ECF No. 18. He was sentenced to 46 months' imprisonment. *Id.* at 2. In 2016, Conley was convicted of: interference with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a); three counts of use of a communication facility to facilitate drug trafficking, in violation of 21 U.S.C. § 843(b), (d)(1); and interstate communication with intent to extort, in violation of 18 U.S.C. § 875(b). *United States v. Conley*, No. 5:15-cr-0254 (Oct. 31, 2016), ECF No. 96. For this conviction, Conley was sentenced to 115 months' confinement, plus a consecutive term of 24 months' confinement for violating the terms of his supervised release after his previous conviction. *Id.* at 2.

In September 2023, Conley filed an informal request for relief in the prison where he was held. *See* Doc. 1-3, at 1. In the request, he questioned why his "recidivism risk assessment score [was] Medium on the General level and High on the violent level."[2] *Id*. Conley asserted that given his history, his scores should be zero. *Id*. A counselor who reviewed Conley's request responded that "[t]he FSA recidivism risk assessment is computer generated." *Id*.

Dissatisfied with his counselor's response, Conley filed an appeal with the Bureau of Prisons regional administrator. Doc. 1-6. He noted that the counselor's response did "not address [his] concerns," and stated that although he was "being scored" for having committed violent offenses, his offenses were not violent. *Id*. at 1.

---

[2] As is discussed below, this score is relevant to the date on which Conley could be released to post-release control.

2

Regional Director Heriberto H. Tellez responded in November 2023. Doc. 1-7. Tellez noted that Conley had been "convicted under 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 1951(a)." *Id*. at 1. And "[a]ccording to the PATTERN Violent Offense Codes, these offenses are … considered violent and are scored as such on the Male PATTERN tool."[3] *Id*. Tellez thus denied Conley's appeal. *Id*.

Conley appealed Tellez's decision. *See* Doc. 1-8. In this appeal, Conley "maintain[ed] that the [Bureau] … erroneously scored [his] offense as violent for the purpose of determining [his] PATTERN risk level." *Id*. at 1. Because this alleged error prevented him from using time credits, he asked the Bureau to correct its alleged error and "apply [his] time credits." *Id*. He added that neither of his referenced convictions constituted a "crime of violence" and asserted that if a crime is nonviolent for purposes of the sentencing guidelines, the Bureau is bound to also consider it to be nonviolent. *Id*.

Timothy Barnett, National Inmate Appeals Administrator, denied Conley's appeal in January 2024. Doc. 1-9. Barnett first stated that having reviewed documents related to Conley's appeal, "[w]e … concur with the manner in which the Warden and Regional Director responded to [Conley's] concerns." *Id*. at 1. Barnett added that "[u]pon review, it was determined the scoring of your offense as violent is appropriate." *Id*. And "only inmates with

---

[3] PATTERN refers to the Bureau's Prisoner Assessment Tool Targeting Estimated Risk and Needs, which is a tool the Bureau uses to evaluate risk and needs of inmates. More on this below.

3

low or minimum recidivism scores are eligible to apply for the time credit." *Id*. Barnett concluded by noting that Conley had a high recidivism risk but that he could seek relief from his warden.[4] *Id*.

Conley filed this action in August 2024. *See* Doc. 1. In a memorandum supporting his petition, Conley says that his petition concerns the Bureau's "interpretation of 'crime of violence[,]' which it uses to increase the risk level." Doc. 1-2, at 8–9. He asserts that the Bureau "incorrectly increased his risk recidivism level to medium and denied his earned time-credits." *Id*. at 9.

Conley next references the Bureau's Program Statement P5162.05, which concerns "Categorization of Offenses." *Id*. at 12–13; *see* https://www.bop.gov/policy/progstat/5162_005.pdf. In this report and recommendation, I refer to this Program Statement as "the Statement." According to Conley, neither of his offenses fall under the mandatory list of *crimes of violence* in Section 3 of the Statement.[5] Doc. 1-2, at 13. He asserts instead that his offenses are listed in Section 4, which lists offenses that, in the

---

[4] In certain circumstances, an inmate's warden has the discretion to "transfer[]" the inmate "to prerelease custody or supervised release." *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II).

[5] Conley is partly mistaken. His conviction under Section 922(g) is listed under section 3 in the Statement as being among the offenses that are each "categorized as a crime of violence." *see* https://www.bop.gov/policy/progstat/5162_005.pdf at 2–3. Conley's conviction under Section 1951(a) is listed in section 4 as an offense that may, "at the director's discretion," serve as a basis to "preclude[] [him] from receiving certain Bureau program benefits." *Id*. at 8–12.

4

Director's discretion, will provide a basis to "den[y] a program benefit." *Id.*; *see* Statement at 8.

Conley argues that because Section 4 of the Statement references language similar to 18 U.S.C. § 924(c), which includes a definition of *crime of violence*, *see* 18 U.S.C. § 924(c)(3), the Bureau is bound to follow precedent interpreting Section 924(c)(3). Doc. 1-2, at 13–15. And under that precedent, neither of his offenses is a crime of violence. *Id.* at 14–15.

Moving on, Conley argues that after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the Court should not defer to the Bureau's interpretation of the First Step Act. *Id.* at 16. He adds that the Bureau's reference in the Statement "to the phrase 'crime of violence[,]' unambiguously refers to … offenses defined by" 18 U.S.C. § 16 (which also defines a *crime of violence*). *Id.* at 17. And since the Bureau has tied its interpretation to the statutory language, he says, the Court "cannot agree with the [Bureau's] interpretation." *Id.*

Conley concludes by asserting that the Bureau's interpretation violates the Administrative Procedure Act. *Id.* at 18. Specifically, he faults the Bureau for failing to comply with notice-and-comment requirements, *see* 5 U.S.C. § 553, and adds that the Bureau has "usurp[ed] … congressional intent," Doc. 1-2, at 19.

The Warden filed a return and motion to dismiss. Doc. 7. He counters that the determination of an inmate's risk classification is a decision wholly

5

committed to the Bureau's discretion. Doc. 7, at 6. He adds that "the PATTERN assessment contains its own list of … violent offenses," which includes Conley's offenses. *Id*. (citing https://www.bop.gov/inmates/fsa/docs/fsa_pattern_violent_offense_codes.pdf). The Warden asserts that courts have rejected the argument that the statutory definition of *crime of violence* limits the Bureau's risk assessments. *Id*. at 7.

Moving on, the Warden says that the Bureau's interpretation is entitled to decisive weight and reiterates that risk assessments are wholly committed to the Bureau's discretion. *Id*. at 7–8. Citing 18 U.S.C. § 3625, the Warden asserts that PATTERN scores are not subject the Administrative Procedure Act.[6] *Id*. at 9.

Conley filed a traverse. Doc. 8. In it, he disputes whether the Court should defer to the Bureau's interpretation of the First Step Act and says that "even if the [Bureau] may be within its authority … to promulgate" the Statement and "categorize [18 U.S.C. §] 922(g) as a crime of violence … , NO such authority is awarded to the [Bureau] by the First Step Act." *Id*. at 2–5; *see id*. at 7, 10–11. Conley says that the Bureau's "offense codes directly

---

[6] Section 3625, states that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code," which are part of the Administrative Procedure Act, "do not apply to the making of any determination, decision, or order under this subchapter." As used in Section 3625, this subchapter refers to Subchapter C, which is comprised of 18 U.S.C. §§ 3621 to 3626.

contradict … federal statutory law … and thus constitute unfair surprise." *Id.* at 6. He also relies on legislative history. *Id.* at 7–8.

Conley further argues that Section 3625 doesn't apply to the decisions in his case. *Id.* at 9. This is the case—according to Conley—because although Section 3625 makes the Administrative Procedure Act inapplicable to decisions made under 18 U.S.C. §§ 3621 to 3626, the Bureau acted in his case under 18 U.S.C. §§ 3631 to 3635. *Id.*

In a sur-reply, the Warden asserts that Conley is mistaken to assert that the Bureau denied him time credits. Doc. 10, at 2. Indeed, the Warden asserts, Conley has earned 700 days of time credits, which he may apply "*if* [he] becomes eligible to use them." *Id.* (emphasis added).

Further, by statute and regulation, Conley must maintain two consecutive minimum or low PATTERN scores to be eligible to apply his time credits. *Id.* at 3 (citing 18 U.S.C.§ 3624(g)(1)(D)(i)(I) and 28 C.F.R. § 523.44(c)(1)). The Warden adds that "[t]he PATTERN tool contains its own list of crimes that qualify as violent for scoring purposes," which "includes federal offenses under 18 U.S.C. § 922 (Firearms) and 18 U.S.C. § 1951 (Racketeering)." *Id.* He asserts that the "PATTERN assessment criteria are not" creatures of statute and that the Bureau is not limited by a statutory definition of a *crime of violence*. *Id.*

Moving on, the Warden says that the Bureau's "determination that Conley's offenses constitute a 'crime of violence' is well within [the Bureau's]

7

discretion under the" First Step Act. *Id*. at 6. The Warden also argues that the PATTERN tool represents a reasonable exercise of the Attorney General's discretion. *Id*. at 7–8.

Finally, the Warden says that in arguing that Section 3625 doesn't apply, Conley misunderstands "that the implementation and assessment of PATTERN scores and recidivism risk levels are determined under § 3621(h) and § 3624(g)(1) which are contained in Subchapter C and to which 18 U.S.C. § 3625 applies." *Id*. at 8–9.

*Discussion*

A claim, such as the one Conley presents for time credits, is cognizable under 28 U.S.C. § 2241. *Barroca v. Quintana*, No. 20-5165, 2021 WL 3519335, at *2 (6th Cir. May 19, 2021); *see Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998) ("In general, a petition for a writ of habeas corpus under § 2241 is reserved for a challenge to the manner in which a sentence is executed, rather than the validity of the sentence itself."). Questions of statutory interpretation are reviewed de novo. *United States v. Windham*, 53 F.4th 1006, 1010 (6th Cir. 2022).

"Federal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241." *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 232 (6th Cir. 2006); *see Campbell v. Barron*, 87 F. App'x. 577 (6th Cir. 2004) (affirming, due to a failure to exhaust administrative remedies, the dismissal of a Section 2241 petition that sought good-time credit). Conley's

8

evidence shows that he exhausted his available administrative remedies, Doc. 1-2, at 3, 5, and the Warden does not claim otherwise.

*The First Step Act*

"Federal sentencing law permits federal prison authorities to award prisoners credit against prison time as a reward for good behavior." *Barber v. Thomas*, 560 U.S. 474, 476 (2010). After a defendant is sentenced, the Attorney General, "acting through the [Bureau], is responsible for calculating an inmate's term of confinement." *Newsome v. Williams*, No. 15-cv-141, 2016 WL 11431790, at *3 (N.D.W. Va. May 26, 2016), *report and recommendation adopted*, 2016 WL 4153615 (N.D.W. Va. Aug. 5, 2016); *see Morgan v. Morgan*, No. 08-HC-2114, 2010 WL 3239080, at *3 (E.D.N.C. Aug. 16, 2010) ("Implicit in [the] authority [granted to the Bureau] is the ability to calculate, and re-calculate, the sentence as changes occur and time is earned and lost, and to correct any inaccurate calculations as they are discovered.").

The First Step Act was passed in December 2018. Among other things, it required the Attorney General to establish a "risk and needs assessment system," referred to as "the System," to be used as a classification tool to assess both a prisoner's risk of recidivism and the prisoner's risk of violent or serious misconduct. *See* 18 U.S.C. § 3632(a)(3). Among other things, "the System is designed to be used to … assess the inmate's risk of violent or serious misconduct; determine the appropriate type and amount of evidence-based recidivism reduction ('EBRR') programming appropriate for each inmate;

9

periodically reassess an inmate's recidivism risk." *Kurti v. White*, No. 19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (footnote omitted).

To accomplish the System's goals, "the Bureau designed its 'Prisoner Assessment Tool Targeting Estimated Risks and Needs' ('PATTERN) system, which ultimately places a prisoner in one of four recidivism risk categories: minimum, low, medium, or high." *Harris v. Holzapfel*, No. 23-cv-0610, 2025 WL 769606, at *3 (S.D.W. Va. Feb. 14, 2025), *report and recommendation adopted*, 2025 WL 757827 (S.D.W. Va. Mar. 10, 2025). By statute, an inmate who completes evidence-based recidivism reduction programming can earn time credits to be applied toward time in prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(A). The amount of time credits that an inmate may earn, however, varies according to the inmate's risk level.

> A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A).

Importantly, while any inmate may earn time credits, only an inmate with "low" and "minimum" risk scores can have the credits applied toward prerelease custody or early transfer to supervised release. *Harris*, 2025 WL 769606, at *4; *Felton v. Janson*, No. 23-cv-04657, 2024 WL 4186071, at *4 (D.S.C. May 15, 2024), *report and recommendation adopted*, 2024 WL 3982834 (D.S.C. Aug. 29, 2024); *see* 28 C.F.R. §§ 523.42, 523.44(c)(1), (d)(1). An inmate with a high or medium PATTERN score can petition the inmate's warden to be considered on an individualized basis for placement in prerelease custody or supervised release. *Harris*, 2025 WL 769606, at *6; *see* 18 U.S.C. § 3624(g)(1)(D)(i)(II)).

As to prerelease custody, Bureau regulations provide:

> (c) Prerelease custody. The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:
>
>> (1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or
>>
>> (2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:
>>
>>> (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

> (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
>
> (iii) The prisoner is unlikely to recidivate.

28 C.F.R. § 523.44(c); *see* 18 U.S.C. § 3624(g)(1)(D)(i).

Regulations as to early transfer to supervised release state:

> (d) Transfer to supervised release. The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:
>
> (1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;
>
> (2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and
>
> (3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.

28 C.F.R. § 523.44(d).

"All sentenced inmates … will receive both a risk and need assessment," which indicates their risk of recidivism. *See* Bureau Program Statement 5410.01 at 8, available at https://www.bop.gov/policy/progstat/5410.01_cn2.pdf. As noted, PATTERN is the recidivism risk assessment tool, which is part of the Bureau' approved Risk and Needs Assessment System. *Id*.

12

> [A]n inmate's PATTERN score is determined considering 15 factors, resulting in the determination of both a "general" score and a "violent" score. (ECF No. 8 at 3-4). Among those factors are whether the instant offense was violent and whether the inmate has a history of violence. A "General Male" score between 6 and 39 and a "Violent Male" score between 8 and 24 are considered a low risk level. (Id.) A "General Male" score between 40 and 54 and a "Violent Male" score between 25 and 31 are considered a medium risk level. (Id.) A "General Male" score of 55 or more and a "Violent Male" score of 32 or more are considered a high risk level. (Id.) "An inmate's [risk level classification] is determined as the highest of the two ratings on the general or violent recidivism scale." (Id.)

*Harris*, 2025 WL 769606, at *3.

*Analysis*

Conley does not challenge any factual determination. Rather, the thrust of Conley's argument is that courts have interpreted the statutory term *crime of violence* and have held that his offenses don't fall within its meaning. Doc. 1-2, at 13–15. And because the Statement references language similar to the statutory definition of *crime of violence*, *see* 18 U.S.C. §§ 16, 924(c)(3), the Bureau is bound to follow precedent interpreting that definition, Doc. 1-2, at 13–15. Further, if neither of his offenses were considered violent, his PATTERN risk score would be lower and he would have achieved the requisite minimum or low recidivism risk assessments through two consecutive risk and needs assessments.

13

This is a popular argument for inmates in Conley's circumstance. *See, e.g., Sampson v. Lillard*, No. 23-cv-1792, 2024 WL 4040350 (S.D. Ill. Sept. 4, 2024) (stating that the petitioner "target[ed] [the Bureau's] policy to classify convictions for felons in possession of a firearm under § 922(g)(1) as a 'crime of violence'"). Nonetheless, there are a few problems with Conley's argument, starting with his premise. Conley points to nothing that would require the Bureau to apply statutory interpretations of *crime of violence* to its PATTERN risk scores. Indeed, no statute tells the Bureau how to assess a prisoner's risk of recidivism generally or a PATTERN risk score, specifically. *See Williams v. Warden*, No. 24-cv-0022, 2024 WL 1859805, at *3 (S.D. Ind. Apr. 29, 2024) ("application of FSA time credits are contingent on numerous factors, including PATTERN scores; they are not statutorily mandated."). Courts that have confronted arguments such as Conley's have thus concluded that the determination of an inmate's recidivism risk and his PATTERN risk score are matters entirely committed to the Bureau's discretion. *See Washington v. Bureau of Prisons*, No. 19-cv-1066, 2019 WL 6255786, at *3 (N.D. Ohio July 3, 2019), *report and recommendation adopted*, 2019 WL 6251777 (N.D. Ohio Nov. 22, 2019); *see also Harris*, 2025 WL 769606, at *7 (citing cases); *Hernandez v. Warden*, No. 24-cv-271, 2024 WL 4965632, at *3 (W.D. Tex. Nov. 28, 2024); *Felton v. Janson*, No. 23-cv-4657, 2024 WL 3982834, at *2 (D.S.C. Aug. 29, 2024); *Hicks v. Heckard*, No. 23-cv-0581, 2024 WL 833190, at *6 n.2 (S.D.W. Va. Feb. 1, 2024) ("[T]he parameters used to determine the PATTERN risk

14

assessment are entirely within the discretion of the BOP and are not reviewable by [a federal district court]."), *report and recommendation adopted*, 2024 WL 818472 (S.D.W. Va. Feb. 27, 2024).

It follows that the Bureau's reliance on its own definition of a *crime of violence* is well within the Bureau's authority under the First Step Act. *See Godbee v. Graham*, No. 24-cv-0702, 2024 WL 5323825, at *5 (D.S.C. Nov. 14, 2024) (citing *Felton*, 2024 WL 3982834, at *2, *Green v. Hudson*, No. 23-cv-3115, 2023 WL 4374013, at *2 (D. Kan. June 29, 2023), *aff'd*, No. 23-3141, 2024 WL 960497 (10th Cir. Mar. 6, 2024) and *Sampson*, 2024 WL 4040350, at *3), *report and recommendation adopted*, 2025 WL 91513 (D.S.C. Jan. 14, 2025). As a result, although Conley's convictions might not qualify as *crimes of violence* for purposes of 18 U.S.C. §§ 16 or 924(c), precedent standing for this point has nothing to do with whether the Bureau may determine that the same offenses are *crimes of violence* for purposes of calculating an inmate's PATTERN score under the First Step Act. *See Pelissero v. Thompson*, 170 F.3d 442, 447 (4th Cir. 1999) ("While the Bureau of Prisons' definition of a crime of violence" in Program Statement 5162.02[7] "may not be consistent with court interpretations of 18 U.S.C. § 924(c)(3), it is, nevertheless, a permissible and reasonable interpretation of the statute from which the Bureau derived its authority.")

---

[7] Former Program Statement 5162.02 "was rescinded in 2009 and replaced by Program Statement No. 5162.05," which is the Statement at issue here. *United States v. Treadway*, No. 19-4779, 2021 WL 2334166 (4th Cir. June 8, 2021).

15

(relying on *Parsons v. Pitzer*, 149 F.3d 734, 738 (7th Cir. 1998)); *Venegas v. Henman*, 126 F.3d 760, 763 (5th Cir. 1997); *Godbee*, 2024 WL 5323825, at *5. As a result, this Court is not in a position to order the Bureau to recalculate Conley's PATTERN score.

In his petition, Conley argues that the Bureau violated the Administrative Procedure Act when it promulgated the Statement without using notice-and-comment procedures. Doc. 1-2, at 18. The Warden cites 18 U.S.C. § 3625 and asserts that Administrative Procedure Act does not apply. Doc. 7, at 9. As noted above, 18 U.S.C. § 3625 provides that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Sections 554 and 555 deal respectively with formal and informal administrative "adjudications." *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 655 (1990). And Sections 701 through 706 contain the judicial review provisions of the Administrative Procedure Act. *See Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011). Further, Section 3625 is in subchapter C, which is comprised of 18 U.S.C. §§ 3621 to 3626. So decisions made under 18 U.S.C. §§ 3621 to 3626 are not subject to review under the Administrative Procedure Act. *Id.* ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the [Bureau's] discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625.").

16

Contrary to Conley's argument, the decision in his case was rendered under 18 U.S.C. §§ 3621(h) and 3624(g), which implement the System, which was in turn created under the mandate in 18 U.S.C. § 3632. *See Harris*, 2025 WL 769606, at *7. It was not rendered under Section 3632. *See Monsevaiz v. Doerer*, No. 24-cv-9925, 2025 WL 808235, at *2 (C.D. Cal. Jan. 10, 2025) ("Decisions regarding a prisoner's recidivism risk appear to fall within [Section 3625's] jurisdictional bar."), *report and recommendation adopted*, 2025 WL 808233 (C.D. Cal. Mar. 12, 2025). So Section 3625 bars review under the Administrative Procedure Act of the Bureau's adjudication of Conley's individual challenge. *See Johnson v. O'Donnell*, No. 24-cv-04012, 2024 WL 3927643, at *3 (D.S.D. Mar. 29, 2024) ("A challenge to the [Bureau's] calculation of a prisoner's … credits in a specific case is an adjudicative decision which is not subject to judicial review."), *report and recommendation adopted*, 2024 WL 3925828 (D.S.D. Aug. 23, 2024).

But that does not end the matter. Conley says that the Bureau failed to comply with the notice-and-comment, rule-making procedures in the Administrative Procedure Act. Doc. 1-2, at 18. Those procedures are set out at 5 U.S.C. § 553, which is *not* exempted by Section 3625. *See Iacaboni v. United States*, 251 F. Supp. 2d 1015, 1036 (D. Mass. 2003); *Lyle v. Sivley*, 805 F. Supp. 755, 759 (D. Ariz. 1992). Section 553, however, exempts from its requirements "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b). And "courts have

17

almost uniformly held that [the Bureau's] program statements are non-binding agency guidance that are not subject to the [Administrative Procedure Act's] notice-and-comment requirement." *Ayash v. U.S. Bureau of Prisons*, No. 21-cv-2110, 2022 WL 3444846, at *4 (D.D.C. Aug. 17, 2022) (citing cases); *see Pelissaro*, 170 F.3d at 447 (holding that a previous version of the Statement was an interpretive statement of position and not subject to rulemaking requirements); *Fonner v. Thompson*, 955 F. Supp. 638, 641–42 (N.D.W. Va. 1997) ("Assuming arguendo that the [the Bureau] was subject to the [Administrative Procedure Act] regarding its ruling making, the Court would still uphold [Program Statement] 5162.02(7) because it is an interpretive rule," which "is 'interpretive and explanatory of the" Bureau's "[legislative rule] defining 'crime of violence'"). Indeed, the Seventh Circuit characterized as "meritless," the argument that a previous version of the Statement violated "the rulemaking procedures of the Administrative Procedure Act." *Parsons v. Pitzer*, 149 F.3d 734, 738 (7th Cir. 1998). This was so because the then-current version of the Statement was "an internal agency statement of explanation that is consistent with the regulation it clarifies; it merely lists certain crimes and identifies them as crimes of violence in all cases or in some cases." *Id.*; *see Baldwin v. Fed. Bureau of Prisons*, No. 10-0530, 2010 WL 3522078, at *10 (D.N.J. Sept. 1, 2010) ("the 'notice and comment' procedure does not apply to the Program Statement, an agency 'interpretive rule' as opposed to a 'legislative rule'"); *Thornton v. Hickey*, No. 10-13, 2010 WL 399103, at *3 (E.D.

18

Ky. Jan. 25, 2010) ("To the extent Thornton claims the [Bureau] failed to comply with the rulemaking requirements of 5 U.S.C. § 553, a Program Statement is not considered a regulation, but merely an interpretative rule or general statement of policy, both of which are excepted from the [Administrative Procedure Act's] procedural requirements.").

The upshot of the above is although Conley is correct (though not for the reason he asserts) that 18 U.S.C. § 3625 does not bar review of his argument that the Statement is invalid, his argument nonetheless fails because the Statement is exempt from the notice-and-comment requirements in 5 U.S.C. § 553. *See* 5 U.S.C. § 553(b).

The Bureau has the discretion to classify Conley's offenses as violent and is not bound to apply precedent interpreting the definition found at 18 U.S.C. §§ 16 and 924(c) of a *crime of violence*. The Bureau's issuance of the Statement did not violate the Administrative Procedure Act. As a result, the Court should deny Conley's petition.

## *Conclusion*

For all of the reasons stated, I recommend that the Court deny Conley's petition.

Dated: May 28, 2025

　　　　　　　　　　　　　　　　*/s/James E. Grimes Jr.*
　　　　　　　　　　　　　　　　James E. Grimes Jr.
　　　　　　　　　　　　　　　　U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).